IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01592-PAB-CBS

ROBERT LONCAR, *et al.*,

    Plaintiffs,

v.

WESTERN PEAK, LLC, a Colorado limited liability company, *et al.*,

    Defendants.
_____

**ORDER**
_____

    This case arises out of a dispute between members and managers of two LLCs and the LLCs' former manager and bookkeeper. Plaintiffs allege that defendants misappropriated the LLCs' funds in a scheme violating, *inter alia*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. The matter is before the Court on the motion to dismiss of defendants Cynthia M. Peters and Prosperity Bookkeeping ("Mot. to Dismiss") [Docket No. 74] and the motion for judgment on the pleadings by the remaining defendants ("Mot. for J.") [Docket No. 82]. For the following reasons, the Court will grant both motions.

**I. BACKGROUND**[1]

    Plaintiff alleges that defendant David Fiore, by use of various corporate entities and with the help of defendants Beverly Fiore and Cynthia Peters, misappropriated the funds of, and misrepresented his position with, plaintiffs Little Red Ski Haus, LLC

---

[1] The following facts are drawn from the complaint and presumed to be true for purposes of resolving the present motions.

("LRSH") and Roaring Fork River Development, LLC ("Roaring Fork"). Plaintiff Joseph McCullough is a member and manager of LRSH and Roaring Fork, as well as an equity investor in both entities. Plaintiff James Otis is also an investor in both entities, as well as a member and manager of Roaring Fork. Plaintiff Robert Loncar is an investor, member, and manager of Roaring Fork. Roaring Fork's business consists of running a mobile home park, and LRSH is a bed and breakfast.

Fiore, through defendant Western Peak, LLC ("Western Peak"), is the former manager of both Roaring Fork and LRSH. Defendants Peters and Prosperity Bookkeeping, Inc., both doing business as CMP Financial, provided bookkeeping and financial services to LRSH and Roaring Fork when Fiore managed the entities. Plaintiffs allege that Fiore misappropriated funds of LRSH and Roaring Fork, "sweeping" them onto the books of separate entities such as Western Peak, and that Peters created an accounting scheme to aid Fiore in that misconduct. Fiore spent Roaring Fork's and LRSH's funds, either directly or after they were moved to the books of separate entities, on a large party, a personal automobile navigation service, home utility expenses, a credit card bill, a ski pass, and foreign travel. Fiore moved funds from personal accounts to his entities' accounts to cover certain of these expenses. Moreover, this misappropriation, and efforts to shield its detection, were allegedly aimed at depressing the LLCs' value so that Fiore could purchase them at a discount.

During the time period he was engaged in such conduct, Fiore communicated with plaintiffs by email. In none of those emails did he reveal that he was misappropriating the LLCs' funds. These repeated failures to disclose his misconduct are the primary predicate acts plaintiffs now allege provide the basis for their RICO

2

claim against Fiore and the other defendants. Furthermore, plaintiffs contend that the defendants' conduct constituted an extortionate scheme to obtain the assets of the LLCs at a below market price and receive personal loan guarantees from individual plaintiffs.

Since Fiore's removal from his management position by the entities' members, he has continued to exercise control over the LRSH website by refusing to turn over the website's data files. Moreover, plaintiffs have made demands on Fiore and Peters to produce the complete records of LRSH and Roaring Fork. To date, plaintiffs have not received all of the records they have requested.

## II. STANDARD OF REVIEW

The Court reviews a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) much as it does a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Park University Enterprises, Inc. v. American Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006) ("We review a district court's grant of a motion for judgment on the pleadings *de novo*, using the same standard that applies to a Rule 12(b)(6) motion.").

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Sutton v. Utah St. Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe

them in the light most favorable to the plaintiff."  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).   At the same time, however, a court need not accept conclusory allegations.  *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erikson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (omission marks omitted).  The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alteration marks omitted).

### III. DISCUSSION

#### A. RICO

To succeed, plaintiffs' RICO claim "must allege a violation of 18 U.S.C. § 1962, which consists of four elements: (1) conduct (2) of an enterprise (3) through a pattern

4

(4) of racketeering activity." *Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir. 2007) (quotation omitted). "A 'pattern of racketeering activity' must include at least two predicate acts." *Id.* (citing *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003). The Court finds that plaintiffs have failed to adequately allege a "pattern" of racketeering activity.[2]

As predicate RICO acts, plaintiffs allege that defendants committed (1) mail fraud in violation of 18 U.S.C. § 1341, (2) wire fraud in violation of 18 U.S.C. § 1343,[3] (4) extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 and the Colorado extortion statute, Colo Rev. Stat. § 18-3-207,[4] and (5) bank fraud in violation of 18 U.S.C. §

---

[2] Defendants challenge plaintiffs' standing to bring a RICO claim. The Court is satisfied, at this stage of the proceedings, that the complaint adequately alleges that plaintiffs were "injured in [their] business or property by reason of the defendant's violation of § 1962." *Deck*, 349 F.3d at 1257. Moreover, regardless of any distinctions between treatment of LLCs and corporations for purposes of assessing individual standing, the individual plaintiffs have adequately alleged they were induced to make personal loan guarantees, providing them with standing to sue which is distinct from the LLCs. *See Bixler v. Foster*, --- F.3d ----, 2010 WL 597477, at *3 (10th Cir. Feb. 22, 2010).

[3] Plaintiffs' allegations connecting the relevant mail and wire communications with the scheme to convert funds are attenuated. *See Dummar v. Lummis*, 543 F.3d 614, 621 (10th Cir. 2008) (allegations of fraud underlying a RICO claim must be pled with particularity); *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). Because plaintiffs' allegations fall well short of pleading a "pattern," the Court need not resolve whether plaintiffs have adequately alleged acts of mail and wire fraud.

[4] The Court notes that the complaint contains no allegations that defendants obtained property from plaintiffs "by wrongful use of actual or threatened force, violence, or fear, or under color of official right," 18 U.S.C. § 1951, or made "a substantial threat" of any kind. Colo. Rev. Stat. § 18-3-207(1)(a). Plaintiffs argue that the complaint describes the "creation of an environment of fear and intimidation." Pls.' Response to Mot. for J. [Docket No. 100] at 15. The Court finds no allegations supporting such a contention. Plaintiffs also allege that defendants' institution of a state court lawsuit against them is extortionate. That allegation is unavailing. The Tenth Circuit has "refused to 'recogniz[e] abusive litigation as a form of extortion [because

5

1344.⁵  "Even if the allegations of predicate acts were adequate, . . . the complaint does not adequately allege a 'pattern' of racketeering activity because it fails to allege sufficient continuity to sustain a RICO claim."  *Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009).

"RICO is not aimed at the isolated offender."  *Hall*, 584 F.3d at 867 (quotations and citation omitted).  Therefore, the complaint must "allege not only that the defendants had committed two or more predicate acts, but also 'that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity.'"  *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)) (emphasis in *H.J. Inc.*).  More precisely, plaintiff must allege "continuity plus relationship."  *Bixler* , 2010 WL 597477, at *6 (quotations, citation, and emphasis omitted).

To meet the relationship test, plaintiff must simply allege that the "'predicate acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *Id.* (quoting *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545,

---

doing so] would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim.'"  *Bixler v. Foster*, --- F.3d ----, 2010 WL 597477, at *4 (10th Cir. Feb. 22, 2010) (quoting *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003)) (alterations in *Bixler*).

⁵Plaintiffs allege that Fiore, after his termination as manager of LRSH, transferred funds without authority from LRSH's bank account to pay a credit card bill of defendant Beverly Fiore.  *See* Compl. [Docket No. 66] at 35, ¶58.  Plaintiffs reversed the transaction once they became aware of it.  Regardless of whether this conduct constitutes bank fraud, *see* 18 U.S.C. § 1344; *United States v. Akers*, 215 F.3d 1089, 1100 (10th Cir. 2000), it is a single predicate act.  In the absence of any other predicate acts, *see supra*, the allegation of a single fraudulent transfer fails to state a RICO claim.

1555 (10th Cir. 1992) (quotations omitted)). Even assuming plaintiffs had met this test, they have not alleged conduct establishing "continuity."

"The showing required for 'continuity' . . . 'is more difficult to meet.'" *Id.* (quoting *Boone*, 972 F.2d at 1555). Because Congress "'expressed an intent that RICO reach activities that amount to or threaten long-term criminal activity,'" the continuity test is met only if there has been "a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *Id.* (quoting *H.J. Inc.*, 492 U.S. at 241, 243 n.4).

Plaintiffs have represented that "the victims of the fraudulent schemes perpetrated by the defendants were relatively few in number, consisting of the two LLC[s] and their members – particularly their members who personally guaranteed loans arranged by Defendants Fiore and Western Peak." Pls.' Response to Mot. for J. [Docket No. 100] at 13. They make this point to support their contention that the alleged predicate acts were sufficiently related. But that does not address the more difficult showing of continuity. *See H.J., Inc.*, 492 U.S. at 242 ("[W]hat must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are distinct requirements.").

"A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993). The Tenth Circuit considers, first, "the duration of the related predicate acts," and, second, "the extensiveness of the RICO enterprise's scheme." *Id.* ("Multiple on-going activities

7

are more likely to satisfy the continuity requirement than would be several sporadic, albeit still related, acts."). Even assuming the emails here, sent over the course of a little over a year, constituted "a period of repeated criminal activity . . . sufficient to constitute a 'substantial period of time' as envisioned in *H.J. Inc.*", "the facts as alleged fail to show any threat of 'future criminal conduct,'" *Boone*, 972 F.2d at 1556, because there is a lack of "extensiveness." *Resolution Trust*, 998 F.2d at 1543.

The Court considers "the number of victims, the number of the racketeering acts, the variety of racketeering acts, whether the injuries caused were distinct, the complexity and size of the scheme, and the nature or character of the enterprise or unlawful activity." *Id.* (citation omitted). Despite their attempt to create the semblance of a pattern through pleading each separate communication where the misconduct was not revealed, plaintiffs' allegation of misconduct boils down to the following:

> The core fraudulent activity of Defendants . . . has consisted in skimming money from LRSH and RFRD, literally draining the accounts of those entities of their operating income receipts from their respective bed and breakfast and mobile home park operations, and diverting those monies to the accounts of Western Peak, so as to earn interest on the deposits in the name of Western Peak and so as to deprive LRSH and RFRD from the benefits of substantial regular balance deposit relationships with their banks, including deprivation of interest income on what should have been substantial daily balances.

Compl. at 18, ¶34C. Although defendants may have skimmed money on more than one occasion, the complaint describes a limited range of acts aimed at achieving a singular goal at the expense of a small group of victims. *See Bixler*, 2010 WL 597477, at *7 (concluding that a complaint failed to state a RICO claim because it "allege[d] that defendants engaged in a single scheme to accomplish [a] discrete goal").

Once Fiore was removed from his position, the threat of continued unlawful

activity ceased.  Like in *Boone*, "[p]laintiffs allege what is actually a closed-ended series of predicate acts constituting a single scheme [misappropriation of funds] to accomplish a discrete goal [sale of the LLC to Fiore at a discount] directed at a finite group of individuals [plaintiffs Loncar, McCullough, and Otis] 'with no potential to extend to other persons or entities.'" *Boone*, 972 F.2d at 1556 (quoting *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990).[6]  "Thus plaintiffs have not alleged the type of activity that RICO was enacted to address."  *Id.*  Consequently, the RICO claim must be dismissed.

### B. State Law Claims

Plaintiffs have also brought claims arising under state law.  The Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).  The Court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Plaintiffs have not identified any reason the Court should retain jurisdiction over the state law claims if the federal claim is dismissed.[7]  Because the

---

[6] *See Kaplan v. Reed*, 28 F. Supp. 2d 1191, 1198 (D. Colo. 1998) ("What Plaintiffs have pled is acts by William Reed for the purpose of defrauding those who were his creditors.  This is insufficient to plead a violation of § 1962(c).").

[7] Although plaintiffs invoked diversity jurisdiction in their first complaint, plaintiffs' second amended complaint [Docket No. 66] only invokes federal question as a basis for this Court's jurisdiction.  Defendants asserted in their motions to dismiss that the LLC plaintiffs are Colorado citizens, thus destroying diversity.  *See* Mot. for J. [Docket No. 82] at 12; Br. in Support of Mot. to Dismiss [Docket No. 75] at 11.  Plaintiffs have not contested that assertion, and "[t]he party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter."  *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004); *cf. U.S. Advisor, LLC v. Berkshire Prop. Advisors*, No. 09-cv-00697-PAB-CBS, 2009 WL 2055206, at *2 (D. Colo. July 10, 2009) (listing cases for the proposition that the citizenship of an LLC is determined by the

9

Court will dismiss plaintiffs' RICO claim, it will decline to exercise supplemental jurisdiction over the state law causes of action.

### C. Amendment

During a hearing on February 24, 2010, plaintiffs indicated that they may seek to amend their complaint. As of the date of this Order, there is no motion to amend pending before the Court. In any event, plaintiffs' operative complaint is their Second Amended Complaint, filed on February 20, 2009. As such, it is their third complaint. Defendants filed motions to dismiss each of plaintiffs' complaints. The Court will not allow plaintiffs to amend their complaint, thus beginning a fourth round, as "justice does not require Plaintiffs to be allowed four 'bites at the apple.'" *Kaplan v. Reed*, 28 F. Supp. 2d 1191, 1199 (D. Colo. 1998); *see* Fed. R. Civ. P. 15(a)(2).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the motion to dismiss [Docket No. 74] and motion for judgment on the pleadings [Docket No. 82] are GRANTED. It is further

**ORDERED** that plaintiffs' second claim for relief is dismissed with prejudice. It is further

**ORDERED** that, because the Court declines to exercise supplemental jurisdiction, plaintiffs' state law claims are dismissed without prejudice. It is further

**ORDERED** that judgment shall enter in favor of defendants and against plaintiffs.

---

LLC's members).

DATED March 15, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge