IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01592-PAB-CBS

ROBERT LONCAR,
JOSEPH T. MCCULLOUGH,
JAMES OTIS, JR.
LITTLE RED SKI HAUS, LLC,
ROARING FORK RIVER DEVELOPMENT, LLC,

    Plaintiffs,

v.

WESTERN PEAK, LLC, a Colorado limited liability company,
CYNTHIA M. PETERS, doing business as CMP Financial,
PROSPERITY BOOKKEEPING, INC.,
DAVID R. FIORE, doing business as JC Ventures,
BEVERLY FIORE,
RLF ENTERPRISES, LLC.

    Defendants,

v.

ALPINE BANK,

    Counterclaimant.

_____

# ORDER
_____

This matter is before the Court on two motions for attorneys' fees pursuant to 28 U.S.C. § 1927, one from Western Peak, LLC, David Fiore, RLF Enterprises, LLC, and JC Ventures (collectively "Western Peak") [Docket No. 145] and one from defendants Cynthia M. Peters and Prosperity Bookkeeping, Inc. [Docket No. 148]. Both motions argue that plaintiffs' attorney George Allen had no basis to assert federal jurisdiction in this case and therefore unreasonably and vexatiously multiplied the proceedings.

**I. BACKGROUND**

This case arose out of a dispute between members and managers of two LLCs and the LLCs' former manager and bookkeeper. Plaintiffs alleged that defendant David Fiore, by use of various corporate entities and with the help of defendants Beverly Fiore and Cynthia Peters, misappropriated the funds of, and misrepresented his position with, plaintiffs Little Red Ski Haus, LLC ("LRSH") and Roaring Fork River Development, LLC ("Roaring Fork") (collectively "the LLCs"). Plaintiff Joseph McCullough is a member and manager of LRSH and Roaring Fork, as well as an equity investor in both entities. Plaintiff James Otis is also an investor in both entities, as well as a member and manager of Roaring Fork. Plaintiff Robert Loncar is an investor, member, and manager of Roaring Fork. Fiore, through defendant Western Peak, LLC, is the former manager of both Roaring Fork and LRSH. Defendants Peters and Prosperity Bookkeeping, Inc., both doing business as CMP Financial (collectively "CMP"), provided bookkeeping and financial services to LRSH and Roaring Fork when Fiore managed the entities.

On July 28, 2008, attorney George Allen filed a complaint on behalf of individual plaintiffs Robert Loncar, Joseph McCullough and James Otis [Docket No. 1].[1] The named plaintiffs were the LLCs' individual managers and members despite the fact that the complaint asserted harm only to the LLCs and sought recovery solely on behalf of the LLCs. Moreover, the LLCs were named as defendants. The complaint stated that federal jurisdiction was based on diversity because the individual managers named as

---

[1] Shortly after plaintiffs filed this action, Western Peak filed a complaint against LRSH in the Colorado District Court for Pitkin County, which was later amended to add Roaring Fork as a defendant. At the time defendants sought fees in this action, the Pitkin County case remained pending.

plaintiffs were citizens of Illinois, while the LLCs and other defendants were citizens of Colorado. The complaint also asserted federal question jurisdiction based on a "common law copyright claim," which it stated "implicate[d] 17 U.S.C. § 501, *et seq.*, and the Lanham Act, 15 U.S.C. § 1125(a)." Docket No. 1 at 2.

On July 31, 2008, plaintiffs filed a motion for a temporary restraining order [Docket No. 6], demanding that Western Peak disclose certain records. Both groups of defendants responded to this motion [Docket Nos. 11, 12], arguing in part that the Court did not have jurisdiction over the case because the real parties in interest were the LLCs, whose citizenship destroyed diversity, and because the common law copyright claim did not present a federal question. The same day Western Peak filed a motion to dismiss, incorporating its jurisdictional arguments. On August 8, 2008, plaintiffs moved to withdraw their motion for temporary restraining order because it had been substantially mooted by CMP turning over documents to plaintiffs [Docket No. 16]. In the motion to withdraw, plaintiffs maintained that federal jurisdiction was proper, explaining that the individual plaintiffs could maintain individual actions against LLC management as members of the LLCs. The motion also stated that Mr. Allen prepared the complaint in haste due to the "need to speedily invoke jurisdiction on an emergent basis," but that plaintiffs would be filing an amended complaint in the next few days. Docket No. 16 at 5.

As of August 18, 2008, the deadline for filing responsive pleadings, plaintiffs had still not filed an amended complaint and, therefore, CMP filed a motion to dismiss [Docket No. 18]. On September 8, 2008, Western Peak filed a motion to stay discovery. Magistrate Judge Craig B. Shaffer held a telephonic hearing granting the

motion on September 15, 2008 [Docket No. 33]. The magistrate judge ordered plaintiffs to file an amended complaint by September 19, 2008.

Plaintiffs filed their first amended complaint [Docket No. 34] on September 20, 2008. The first amended complaint still named the individual managers as plaintiffs without alleging any harm to them individually, but it no longer named the LLCs as defendants. It asserted that the Court's jurisdiction was premised both on diversity and the presence of a federal question. However, plaintiffs dropped their common law copyright claim and instead asserted a federal RICO claim pursuant to 18 U.S.C. §§ 1961, 1962 and 1964. On October 3, 2008, both Western Peak and CMP filed motions to dismiss [Docket Nos. 35, 38], arguing that the individual plaintiffs did not have standing to sue based on harm suffered only by the LLCs. Plaintiffs responded [Docket No. 44], contending that the shareholder standing rule does not apply to limited liability companies and citing *Flippo v. CSC Assocs. III, LLC*, 262 Va. 48 (Va. 2001), in support, wherein the Supreme Court of Virginia upheld claims brought individually and derivatively by the member of an LLC. In its reply, Western Peak cited eleven federal cases from other circuits and five cases from other states holding that members of an LLC do not have standing to sue for harms to the LLC. *See* Docket No. 48 at 9-10. CMP filed a reply incorporating these arguments and further argued that Colo. Rev. Stat. §7-80-408 did not confer standing on plaintiffs. Docket No. 49.

On November 18, 2008, the magistrate judge stayed discovery until the resolution of the second round of motions to dismiss [Docket No. 51]. On January 7, 2009, plaintiffs filed a status report [Docket No. 53] in which plaintiffs advised the Court that they intended to file a motion for leave to file a second amended complaint no later

than January 12, 2009. On January 20, 2009, plaintiffs filed the motion for leave to amend [Docket No. 55] and, on February 20, 2009, the magistrate judge granted plaintiffs leave to file the second amended complaint [Docket No. 65].

The second amended complaint [Docket No. 66] added the LLCs as plaintiffs and asserted that jurisdiction was based on the presence of a federal question, namely, the RICO claim. On March 17, 2009, the parties held a scheduling conference. Before the conference, plaintiffs filed a proposed scheduling order [Docket No. 70] claiming that the wrongdoing of defendants was ongoing and that they were unable to fully compute their damages because defendants refused to provide plaintiffs with records. Docket No. 70 at 4. Plaintiffs did not serve any discovery requests upon CMP until February 12, 2010, despite their continued allegations that defendants were withholding records.[2]

On March 16, 2009, CMP filed a third motion to dismiss [Docket No. 74] and, on April 7, 2009, Western Peak filed a motion for judgment on the pleadings [Docket No. 82]. On May 28, 2009, the parties held a settlement conference and reached a contingent settlement agreement; however, the required contingencies did not occur and later attempts at settlement were unsuccessful. At a status conference on February 24, 2010, Mr. Allen indicated his intention to amend the second amended complaint. On March 15, 2010, the Court issued an order dismissing the complaint [Docket No. 142], finding that plaintiffs failed to state a RICO claim and declining to

---

[2] Discovery was stayed in this case from July 28, 2009 [Docket No. 108] to September 22, 2009 [Docket No. 109] and from December 22, 2009 to February 5, 2010 [Docket No. 121].

exercise supplemental jurisdiction over their remaining state law claims.

## II. STANDARD OF REVIEW

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions under section 1927 are appropriate where an attorney's conduct "manifests intentional or reckless disregard of the attorney's duties to the court," *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987), or where "an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (quotations and citations omitted). In the Tenth Circuit, sanctions under section 1927 do not require a finding of bad faith. *See Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008).

## III. ANALYSIS

Both Western Peak and CMP seek attorneys' fees from August 7, 2008, the day after the day Western Peak filed its first motion to dismiss, up until the present.[3] Western Peak submits that the portion of this period in which the parties were focused

---

[3] As a preliminary manner, defendants have not complied with D.C.COLO.L.CivR 54.3 because they filed their motions for attorneys' fees without attaching affidavits detailing the fees sought and the qualifications of the attorneys for whom fees are claimed. Instead, defendants state that they will provide such affidavits to the Court after the Court resolves the present motions. Although the local rule instructs parties not to use such a bifurcated procedure, in the interest of resolving these longstanding issues, the Court will allow this two step procedure in this case.

on settlement should be excluded. Docket No. 145 at 14. Defendants recognize that sanctions under section 1927 cannot be recovered for the filing of a complaint, *see Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006) (explaining that section 1927 covers only multiplication of proceedings, not initiation); therefore, they seek fees starting from the time Mr. Allen should have been on notice of the lack of federal jurisdiction in this case, namely, the filing of the first motion to dismiss. Defendants claim that plaintiffs' three complaints were attempts to manufacture federal jurisdiction where none existed and that Mr. Allen admitted as much when he advised opposing counsel of his preference for litigating in federal court. *See* Docket No. 145 at 5 (alleging Mr. Allen admitted the Court lacked jurisdiction over the original complaint but explaining that "he wanted to keep the case in federal court because he was concerned about negative press if the case were litigated in Pitkin County, and that he also found the state courts (at least in the mountain districts) to be subject to excessive delays because of the burdens of their criminal dockets").

     Mr. Allen does not deny defendants' allegation that he deliberately attempted to manufacture federal jurisdiction in this case. Instead, his responses to the motions for sanctions present irrelevant arguments and ultimately confirm that sanctions are in fact appropriate here. Mr. Allen first contends that the Court cannot award fees because Magistrate Judge Shaffer decided not to award defendants' fees for responding to plaintiffs' first two complaints when he granted plaintiffs leave to amend a second time. Defendants sought fees from plaintiffs for responding to the earlier complaints. However, Magistrate Judge Shaffer merely granted plaintiffs leave to file a second amended complaint without making any finding as to the appropriateness of fees. *See*

Docket No. 65. Defendants raised the issue of fees in their responses to the motion to amend but did not make any separate motion for fees and, thus, the issue was not properly before the magistrate judge.

Mr. Allen next argues that defendants willfully withheld business records from plaintiffs and that this misconduct precludes awarding defendants' fees. It is not clear that defendants wrongfully withheld any documents, as they point out that plaintiffs did not formally request the records they sought until several months into the discovery period and, moreover, never filed a motion to compel the production of these documents when they were not produced. Nonetheless, even if defendants did wrongfully withhold documents, Mr. Allen provides no authority for the proposition that defendants' failure to comply with discovery requests precludes an award of fees under section 1927. This alleged failure to disclose documents is ultimately irrelevant to whether Mr. Allen had a reasonable basis to assert federal jurisdiction.

Finding Mr. Allen's arguments lacking, the Court concludes that sanctions are appropriate in this case. Mr. Allen's unsuccessful attempts to confer federal jurisdiction over this dispute multiplied the proceedings in two ways.[4] First, two of the complaints he filed purported to sue only on behalf of the individual managers and members of the LLCs, not the LLCs themselves, despite the fact that the only damages claimed were to

---

[4] Mr. Allen's attempt to confer federal question jurisdiction in the original complaint by claiming a "common law copyright claim" did not multiply the proceedings as this claim did not reappear in either the first or second amended complaints. Nonetheless, the inclusion of this claim further exposes Mr. Allen's intent to claim federal jurisdiction despite lacking any justifiable basis for doing so. Although Mr. Allen referred to federal copyright statutes in discussing this claim, *see* Docket No. 1 at 2, 12, he framed it as a "common law" claim, thereby expressly indicating that it did not arise under federal statutory law and thereby foreclosing it as a basis of federal jurisdiction.

the LLCs. Given that the three named plaintiffs were residents of Illinois, whereas the LLCs were formed in Colorado, Mr. Allen seems to have made this curious alignment of the parties solely for the purpose of conferring diversity jurisdiction.[5] However, Western Peak's opposition to the motion for temporary restraining order [Docket No. 11], filed on August 6, 2008, should have made Mr. Allen aware of the individual plaintiffs' lack of standing given that Western Peak cited ample authority holding that individual members of LLCs did not have standing to remedy harms to the LLCs themselves in non-derivative actions. Despite this notice, Mr. Allen later filed the first amended complaint, which named only these individuals as plaintiffs without adding any allegations of personal harm to them.[6]

Second, Mr. Allen included a baseless RICO claim in the first amended complaint and included the claim again in the second amended complaint. The Court ultimately dismissed this claim, finding that plaintiffs failed to allege any threat of continuing illegal activity and their allegations fell "well short" of pleading a pattern of misconduct as required by RICO. *See* Docket No. 142 at 9, 5 n.3. Mr. Allen's response to defendants' motions for fees shows that Mr. Allen asserted the RICO claim despite his knowledge that plaintiffs did not have an adequate factual basis to support the claim. Mr. Allen states that he and his clients hoped to discover the factual basis for the

---

[5] *But* s*ee U.S. Advisor, LLC v. Berkshire Prop. Advisors*, No. 09-cv-00697-PAB-CBS, 2009 WL 2055206 at *2 (D. Colo. July 10, 2009) (listing cases holding that an LLC is deemed to be a citizen of all the states in which its members are citizens).

[6] Plaintiffs' second amended complaint added an allegation that defendant Fiore had induced the individual plaintiffs to make personal loan guarantees. The Court found this allegation was sufficient to give these plaintiffs standing, at least as to the RICO claim. *See* Docket No. 142 at 5 n.2.

RICO claim in the 7,000 pages of records they believed were being wrongfully withheld and, if they did not, plaintiffs intended to withdraw the claim. The affidavit of plaintiff Joseph McCullough states that plaintiffs retained the services of a forensic accountant who advised plaintiffs that the missing records "seem to correspond to areas of the electronic records in which there are significant and substantial alterations or corrections," but that without access to these 7,000 pages he could not conclusively establish whether or not these missing pages would evidence unlawful conduct. Docket No. 159-1 at 7. Mr. McCullough states that, this uncertainty notwithstanding, he was "reasonably confident" that if the 7,000 pages had been produced "the information contained therein would have been more than enough to satisfy the numerosity and continuity requirements for pleading of a valid RICO claim." *Id.* at 8.

Nothing in Mr. McCullough's affidavit suggests that plaintiffs reasonably believed these records would reveal a scheme of the scope required by RICO. *See Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (dismissing RICO claim for failing to meet the continuity requirement because the complaint only "allege[d] that defendants engaged in a single scheme to accomplish [a] discrete goal."). The McCullough affidavit demonstrates that plaintiffs at best hoped that the records would reveal other illegal acts because the records corresponded to a period during which they believed that Fiore misappropriated funds. Mr. Allen maintains that plaintiffs were entitled to infer that these records contained evidence of wrongdoing precisely because defendants refused to disclose them. But a party's mere refusal to turn over records before a court orders it to do so does not amount to a sufficient factual basis for an allegation of wrongdoing. Moreover, it is improper for an attorney to file a RICO claim

without factual support on the hope that discovery will support it.  *See Chapman & Cole & CCP, Ltd. v. Itel Container Int'l B.V.*, 865 F.2d 676, 685 (5th Cir. 1989) (awarding Rule 11 sanctions) ("[A]n attorney's responsibility to conduct a reasonable prefiling investigation is particularly important in RICO claims" in light of the "potential for frivolous suits in search of treble damages" under the statute) (quoting Black & Magenheim, *Using the RICO Act in Civil Cases*, 22 Hou. Law. 20, 24-25 (Oct. 1984)).

The Court therefore finds that sanctions are appropriate in this case for the unreasonable multiplication of proceedings in contravention of section 1927.  *See Wang v. Gordon*, 715 F.2d 1187, 1190-91 (7th Cir. 1983) (upholding district court's finding that plaintiff unnecessarily multiplied proceedings by attempting to manufacture federal jurisdiction where "plaintiff knew or should have known that none existed"); *Bolivar v. Pocklington,* 975 F.2d 28, 32-34 (1st Cir. 1992) (upholding section 1927 sanctions where district court found plaintiff engaged in forum shopping); *see also BM Investments, L.L.C. v. Hamilton Family, L.P.*, 2007 WL 1585638 at *5 (E.D. Mich. Mar. 14, 2007) (magistrate recommendation) (finding sanctions under section 1927 were appropriate where plaintiff's theory of federal jurisdiction "lacked a plausible legal basis" and thus removal "caused an entirely separate court system to become involved in the litigation, thus needlessly multiplying the proceedings").  The Court's conclusion that sanctions are appropriate in this case is independent of Mr. Allen's comments to opposing counsel that he would prefer to litigate the case in federal court.  Although this preference may not, as Mr. Allen claims, "gainsay the *bona fides* of filing a federal suit," *see* Docket No. 159 at 11, Mr. Allen has entirely failed to explain those *bona fides* and

convince the Court that he had a plausible belief that federal jurisdiction existed in this case. Mr. Allen failed to perform a reasonable investigation of the legal theories and factual allegations in each of the three complaints he filed on behalf of plaintiffs, in dereliction of his duties to the Court. *See* Fed. R. Civ. P. 11(b) (requiring that claims be "warranted by existing law or nonfrivolous" arguments for extending the law and that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"). Moreover, Mr. Allen persisted in positions defendants demonstrated to be unfounded. *See Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1143 (D. Colo. 2000) ("Section 1927 sanctions may be imposed where counsel persists in a position or in prosecution of a claim after it becomes clear that the position or claim is unfounded.") (citing *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985)). As a result, he unreasonably and vexatiously multiplied the proceedings within the meaning of section 1927. Therefore, the Court will award sanctions for attorneys' fees incurred after the filing of Western Peak's opposition to the temporary restraining order and first motion to dismiss on August 6, 2008. *See Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1225 (10th Cir. 2006) (upholding sanctions for plaintiff's pursuit of meritless claims in the face of defendant's motion to dismiss).

### IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Western Peak, LLC, David Fiore, RLF Enterprises, LLC and JC Ventures' Motion for Attorneys' Fees [Docket No. 145] is **GRANTED**. It is further

**ORDERED** that Cynthia M. Peters and Prosperity Bookkeeping, Inc.'s Motion for Attorneys' Fees [Docket No. 148] is **GRANTED**.  It is further

**ORDERED** that on or before **May 2, 2011**, defendants shall file affidavits complying with D.C.COLO.LCivR 54.3 documenting the fees incurred by the unreasonable multiplication of the proceedings.  Defendants shall exclude time spent pursuing settlement negotiations, time spent responding to discovery if such discovery was also of use in the related case in the District Court for Pitkin County involving defendant David Fiore, and any other time not reasonably related to the multiplication of the proceedings.

DATED March 30, 2011.

                                      BY THE COURT:

                                      s/Philip A. Brimmer
                                      PHILIP A. BRIMMER
                                      United States District Judge